**Larry GRIFFIN, Plaintiff–Appellant,**

v.

**STATE of Missouri,
Defendant–Respondent.**

**No. 52998.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 23, 1988.

Application to Transfer Denied
May 17, 1988.

Daniel Gralike, Clayton, for plaintiff-appellant.

William L. Webster, Atty. Gen., Jared R. Cone, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

PUDLOWSKI, Judge.

Movant was convicted of the capital murder of Quintin Moss. After a jury trial he was sentenced to death. His conviction was affirmed on direct appeal in *State v. Griffin*, 662 S.W.2d 854 (Mo. banc 1983) which contains a detailed discussion of the murder. Movant subsequently filed a pro se Rule 27.26 motion and counsel was appointed. An evidentiary hearing on the allegations in movant's amended petition was held before Judge Edward M. Peek in the Circuit Court in the City of St. Louis. The court issued "Findings of Fact and Conclusions of Law" denying the movant's petition for relief. Movant, on appeal, raises three points of error, all of which assert that his trial counsel rendered ineffective assistance.

Our review in this case is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j). The trial court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Stokes v. State*, 688 S.W.2d 19, 21 (Mo.App.1985).

Since the majority of movant's points on appeal allege ineffective assistance of counsel, the guidelines enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984) and *Seales v. State*, 580 S.W.2d 733 (Mo. banc 1979) must govern our decision. In order for a convicted defendant to succeed on a claim of ineffective assistance of counsel entitling him to a reversal of a death sentence he must show, first, that counsel's performance fell below the standard of reasonable effectiveness. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In assessing the performance of counsel the courts recognize the wide latitude given to counsel in making tactical decisions and must be highly deferential. Further, the movant must overcome the strong presumption that his attorney's conduct fell within the wide range of reasonableness, and that the actions of the attorney are considered sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065. Second, the movant must show that he was prejudiced by the alleged deficient performance. *Id.* at 692, 104 S.Ct. at 2067. The pivotal inquiry when the movant challenges a death sentence is whether there is a reasonable probability that absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Id.* at 695, 104 S.Ct. at 2068.

In his first point movant contends that he was denied effective assistance of counsel in that his trial counsel failed to interview and call as a witness Robert Campbell. Campbell was the unintended victim of a prior attempt on Moss' life. On May 13, 1980 police responded to a report of a shooting at Sarah and Olive streets. There they found a bleeding and dazed Robert Campbell. Quintin Moss was beside him. Campbell told police that a black over brown older Cadillac carrying two black males stopped. One of the occupants got out of the car and fired several shots, one of which struck Campbell in the leg. Within a half hour of that shooting police spotted movant and his nephew in a black over brown 1968 Cadillac three miles from the scene of the shooting.

Campbell did not testify at trial but his statements concerning the May 13 incident were introduced via the testimony of the officers who arrived at the scene of the shooting. Movant now claims that had

Campbell been called to testify at trial he could have refuted the testimony of the police officers and would have stated that he was unable to identify movant as the gunman. The hearing court found that the actions of trial counsel were strategical decisions and as such were not a proper basis for finding trial counsel ineffective. We agree.

The attorney who represented the state at movant's trial testified at the evidentiary hearing that he sought to have Campbell testify to this prior attempt in order to prove scheme, knowledge, intent and premeditation in the later shooting of Moss. It was hoped that this testimony would also identify the defendant as the gunman in the later incident. It was the state's position that Campbell had told officers who arrived on the scene of the May 13 shooting that a black and brown Cadillac carrying two black males stopped at Sarah and Olive streets. One of the occupants alighted and fired several shots from a gun, one of which hit Campbell. After Campbell was transported to the hospital, the police brought the defendant to Campbell's hospital room for identification. Campbell expressed fear of Griffin and declined to identify him as the gunman. Campbell was subpoenaed to testify at the trial but prior to trial he told investigators that he feared Griffin and would leave the courtroom if needed to avoid testifying. After a diligent search, the prosecuting attorney was unable to locate Campbell the day of trial.

Movant's trial counsel had represented movant on other matters in the past. At the evidentiary hearing counsel testified that from the time of movant's arrest until his trial, counsel met with movant in excess of twenty or twenty-five times. During the course of these meetings every detail of movant's case was discussed including the possible testimony of Robert Campbell. Counsel was aware of the existence and contents of the police reports concerning the May 13 shooting. In particular counsel was familiar with the substance of the statements made by Campbell to the police. Counsel stated, however, that he was unaware that Campbell had, at any time, ex-

pressed fear of movant. Counsel stated that he did not contact Campbell or seek to have him testify at trial for the following reasons:

... [I]t was pretty clear from the reports that were given to us what their basic case outline was going to be. Our defense was one of alibi. And our pre-trial in terms of how specifically we would formulate our defense, our concerns with Mr. Campbell was [sic] keeping him out of the courtroom rather than bringing him in ... [I]t was my feeling or our feelings—whatever—that the best way to present the defense was to make it a clean and simple alibi defense. I felt that we had some very good, very strong witnesses on the alibi, and a good circumstantial basis for it. And what we were trying to do was to limit what I saw the State's efforts to make a nexxus [sic] of this whole common scheme. And what we were trying to do, and what we did pre-trial on the motions was to try and keep as much of this out on the basis that it had absolutely nothing to do with Larry.

In furtherance of this strategy counsel filed a pre-trial motion in limine to exclude Campbell's testimony. That motion was overruled. However, defense counsel, in anticipation of this event, had prepared a fall-back position. Upon cross-examination defense counsel would attempt to elicit testimony from Campbell that he was unable to identify Griffin as the gunman in the May 13, 1980 shooting. However, none of these strategies came to fruition because, although he had been subpoenaed, Campbell could not be found on the day of trial and did not testify.

Campbell, some six years later, testified at the evidentiary hearing regarding the circumstances surrounding the May 13,

1980 shooting. While he stated that his back was toward the car carrying the gunmen, the bullet that struck him entered the side of his right thigh, traversed it and went into his left thigh. Immediately after the shooting he was dazed and was taken to the hospital for treatment. While Campbell did not recall making any statements to the police regarding the car or its occupants he does not deny making any such statements.

Two police officers escorted two men to the hospital for possible identification, however, Campbell was unable to identify either as the gunman. Campbell stated that he did not know Griffin prior to the shooting and as a result had no reason to fear him. Campbell was not contacted by movant's attorney but was subpoenaed by the state to testify at trial. However, when he appeared on the day of trial he was told by an unidentified employee that he was no longer needed so he left. Campbell further stated that this would have been his testimony had he been called to testify at movant's trial.

Movant's own testimony at the evidentiary hearing contradicts that of Campbell. Movant testified that after the May 13 shooting he and his nephew were escorted by the police to the hospital where Campbell was receiving treatment. When asked what Campbell said in response to movant's presence in the hospital movant replied, "He said that we was the ones." Movant testified that he told his attorney about this statement.[1]

Trial counsel has a duty to make reasonable investigations or to make a reasonable decision that a particular investigation is unnecessary. When ineffective assistance of counsel is raised, a particular decision not to investigate must be directly assessed

---

1. In its Findings of Fact and Conclusions of Law the trial court made the following finding:

According to the Court's recollection of the testimony at the evidentiary hearing, Robert Campbell did not say that movant "was not the person who had shot him", only that he could not identify Larry and Reginald Griffin as the ones involved in the May 13 shooting. The only testimony to support movant's allegation came from *movant himself who testi-*

*fied that Robert Campbell said "we wasn't the ones".* (Emphasis added).

This statement is contradicted by the record. However, the court went on to conclude that the actions of counsel were trial strategy and denied movant his claim for relief. The primary concern on appeal is the correctness of the result reached by the trial court not the route taken to reach it. *Weber v. Knackstedt,* 707 S.W.2d 800, 804 (Mo.App.1986).

for reasonableness in all the circumstances, applying a heavy measure of deference to counsel and judgment. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066; *Martin v. State,* 712 S.W.2d 14, 16 (Mo.App.1986). The reasonableness of counsel's decision regarding investigation may be substantially influenced by defendant's own statements or actions. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066.

■ In the case before us, the course of action pursued by counsel was clearly a matter of trial strategy. Prior to trial counsel had before him a police report which contained Campbell's description of the car movant was seen in a half hour after the shooting; a police report that put Campbell in the middle of an apparent attempt on Moss' life; and most important, the movant's statement that he was positively identified by Campbell as the gunman. Counsel concluded that the mere fact that Campbell was in close proximity to Moss at the time of the 1980 shooting would be the most damaging aspect of his testimony. Armed with the foregoing information, all of it damaging, counsel could have reasonably concluded that interviewing Campbell would have been fruitless and possibly even harmful. Further, if Campbell's testimony were offered at trial it would have, at best, merely established that he may or may not have made the statement contained in the report.

After considering the circumstances and affording counsel due deference we conclude that the decision not to interview and call Robert Campbell to testify at trial was supported by reasonable professional judgment and was a matter of trial strategy. Movant's first point is denied.

■ In his second point the movant avers that the hearing court erred when it declined to find trial counsel ineffective for failing to offer mitigating circumstances at the penalty phase of his trial. Movant argues that "trial counsel should have recognized and submitted the most obvious mitigating circumstance which the jury could have considered in assessing punishment—the victim's implication in appellant's brother's death." Failure to present this evidence along with counsel's failure to call family members to plead for his life, according to the movant, deprived him of effective assistance of counsel.

At the evidentiary hearing trial counsel stated that there were no statutory mitigating circumstances available to him but recognized that he was free to present evidence beyond that listed in the statute. He recognized that he could have put on family members to make a plea for mercy. However, the defense was based on alibi and defendant had maintained his innocence throughout the trial. Counsel felt that presenting such evidence would send a message to the jury that said "we have been lying to you all week, but give us a break." Counsel felt that such a maneuver would undermine the credibility that he had been trying to establish throughout the trial. Movant testified that counsel had presented him with a list of statutory mitigating circumstances and he agreed with counsel that none of the statutory circumstances applied to his situation. When asked at the evidentiary hearing what information the jury should have heard about him that may have caused the jury not to recommend death movant replied, "I don't know". Movant fails to overcome the presumption that under these circumstances, the course of action pursued by his trial counsel might be considered sound trial strategy. *Id.* The finding of the hearing court is not clearly erroneous. Rule 27.-26(j). Point denied.

■ In his third point movant argues that the hearing court erred in failing to find his trial counsel ineffective for neglecting to file any pre-trial motions related to the death-qualification of the jury. This failure, he argues, deprived him of rights guaranteed him by the Constitution. The thrust of movant's argument appears to be that a reasonably competent attorney would have made a concerted effort to "life-qualify" the jury in response to the efforts of the state to death-qualify the jury. This failure, in movant's words, "undoubtedly left appellant with an unjust conviction and death prone petit jury".

After review of the record and pertinent case law, it is clear that movant is attempting to attack the death-qualification of a

jury by using a back-door approach. Movant's reasoning is flawed. The Missouri Courts have consistently held that the death-qualification of capital juries does not violate the constitutional rights of criminal defendants. *State v. Roberts,* 709 S.W.2d 857, 868 (Mo. banc 1986); *State v. Jones,* 726 S.W.2d 400, 401 (Mo.App.1987).

One of the questions asked of each potential juror by the state in its voir dire was, in essence, this: "If you were instructed that the death penalty is an alternative within the range of punishment, do you feel that you could consider imposing it after hearing all the evidence?" Any juror who answered that question in the negative expressed his inability to follow the instructions of the court. A defendant does not have a right to be tried by jurors who explicitly express an inability to follow the law and the instructions of the court. *State v. Stokes,* 638 S.W.2d 715, 722 (Mo. banc 1982). If death-qualification of a jury is constitutionally permissible, trial counsel cannot be faulted for failing to take any action to prevent such qualification. The finding of the hearing court is not clearly erroneous and accordingly movant's third point is denied.

◼ Movant's fourth point was first raised in this appeal of movant's post conviction proceeding by way of a supplemental pro se brief filed on December 23, 1987, fifteen days before the date set for oral argument. In that point movant avers that his trial counsel was ineffective in that he failed to make a timely objection to the testimony of Missouria Moss concerning the contents of phone calls she received. While this court was not supplied with a transcript of the trial, it would appear from both the record before us as well as from the facts that appear in the direct appeal that during the course of Moss' testimony

she "[repeated] verbal threats she heard from unknown individuals over the telephone...." *Griffin,* 662 S.W.2d at 859. Movant now argues that such testimony was inadmissible as hearsay testimony and that its introduction without objection was "clearly prejudicial." On direct appeal the Missouri Supreme Court found that the issue had not been preserved for review and did not warrant plain error review. *Id.*[2]

We need not determine whether the action or inaction of movant's trial counsel was deficient because movant has failed to show how he was prejudiced. *Strickland,* 466 U.S. at 699, 104 S.Ct. at 2070–71. Movant's trial counsel testified at the evidentiary hearing that he had filed a motion in limine to exclude the testimony of Ms. Moss regarding the phone calls she received. Although we were not provided with a transcript of the trial it would appear from the fact that such testimony was introduced that movant's motion was denied. However, trial counsel stated at the hearing, and movant concedes in his supplemental brief, that no evidence was presented by the state to connect movant to the phone calls. The bare fact that Ms. Moss received threatening phone calls without any evidence linking movant to those calls was, at most, irrelevant and cannot be assumed to be prejudicial absent any evidence to support such a conclusion. Point denied. The judgment of the hearing court is affirmed.

STEPHAN, P.J., and KAROHL, J., concur.

---

**2.** The hearing court, in its Order and Judgment issued on February 23, 1987, stated "[o]f the thirty or more allegations set out in pleadings, many are repetitious, others are not the proper subject of a Rule 27.26 Motion [e.g., '... the trial court: Failed to ...' (b)(1)—(5) of Pro Se Motion] and those which were not addressed at the evidentiary hearing or in the subsequent memoranda filed, are deemed abandoned."

However, our review of the record before us reveals that this allegation was properly raised

as an issue of ineffective assistance of counsel in Section 8(a)(6) of movant's *pro se* motion 27.26 which was filed on November 16, 1984. Further, the issue was addressed at the evidentiary hearing during direct examination of trial counsel by movant's attorney. Despite the fact that no findings of fact or conclusions of law were made by the hearing court on this issue we find the record sufficient to enable us to dispose of this issue.