**Larry GRIFFIN, Appellant,**

v.

**Paul DELO, Appellee.**

No. 90–2377.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 25, 1993.

Decided Aug. 23, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 21, 1994.*

* Arnold, Chief Judge, McMillian and Wollman, Circuit Judges, would grant the suggestion for rehearing en banc.

Daniel J. Gralike, Clayton, MO, argued, for appellant.

Appellant is currently represented by Kent E. Gipson, Kansas City, MO.

Frank Jung, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and URBOM,** Senior District Judge.

** The HONORABLE WARREN K. URBOM, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. On October 11, 1991, this panel addressed the merits of petitioner's claims in his first petition for writ of habeas corpus and affirmed the district court's denial of relief. *Griffin v. Delo,* 946

URBOM, Senior District Judge.

Larry Griffin appeals a final order entered in the United States District Court for the Eastern District of Missouri denying his second, third, and fourth amended petitions for a writ of habeas corpus under 28 U.S.C. § 2254.[1] In support of reversal Griffin argues that he was denied effective assistance of counsel, is actually innocent, and that a pretrial photo identification was tainted by suggestive police misconduct, thereby depriving him of his constitutional due process rights. For the reasons discussed below, we affirm the orders of the district court denying habeas relief and dismissing with prejudice the petitioner's second, third, and fourth amended petitions.

## I. PROCEDURAL HISTORY

On April 14, 1992, we remanded this federal habeas corpus action to the district court for further proceedings consistent with our opinion. We retained jurisdiction over the action and directed the district court to certify a final consideration of the matter. Upon remand, the petitioner filed a second amended petition and later filed a motion to assert a claim based on newly discovered evidence of actual innocence. In July 1993, the district court dismissed the second amended petition with prejudice and granted the petitioner leave to file a third amended petition to assert the claim of actual innocence. On September 16, 1993, the district court granted the petitioner's motion to file a fourth amended petition to assert a claim that his due process rights were violated by suggestive photo identification procedures employed by the St. Louis Police Department.

On October 6, 1993, the district court conducted an evidentiary hearing on the petitioner's third and fourth amended petitions. Later on October 25, 1993, the district court certified its final consideration of this habeas action and entered judgment dismissing Grif-

F.2d 1356 (8th Cir.1991). Later, on April 14, 1992, we vacated the opinion and remanded to the district court for further consideration of additional claims to be raised by the petitioner. *Griffin v. Delo,* 961 F.2d 793 (8th Cir.1992). We consider our initial opinion the final disposition of the petitioner's claims raised in the first habeas petition and do not revisit the claims here.

fin's claim of actual innocence without prejudice and his due process claim with prejudice. However, the district court had dismissed the actual innocence claim without considering its merits based on factual findings from the evidentiary hearing. We, therefore, vacated the judgment of the district court entered on October 25, 1993, and directed the district court to complete factual findings on the evidence and merits of petitioner's claim of actual innocence.

On April 25, 1994, the district court certified its final consideration of this habeas action and entered judgment dismissing with prejudice the petitioner's second, third, and fourth amended petition for habeas corpus relief. We now review the merits of the appeal.

## II. SECOND AMENDED PETITION

On April 14, 1992, we remanded this habeas action to the district court with directions that the petitioner be permitted to file a second amended petition. *Griffin v. Delo,* 961 F.2d 793, 794 (8th Cir.1992). Without reaching the merits of the claims, we found that counsel may not have recognized and presented issues of constitutional significance during the petitioner's post-conviction and habeas proceedings. *Id.* Considering the severity of the sentence, we believed that it was the most prudent course to allow the petitioner a reasonable opportunity to raise additional claims of constitutional error for consideration by the district court. On July 7, 1993, the district court issued its memorandum and order on the petitioner's second amended habeas petition. We now review the findings of the district court.

In his second amended petition for writ of habeas corpus, Griffin raises fourteen claims for relief. Numerous claims allege violations of his Sixth Amendment right to effective assistance of counsel. In addition to allegations of Sixth Amendment violations, Griffin asserts violations of his Fourteenth Amendment right to due process. Griffin further claims that his Eighth Amendment right to be free from cruel and unusual punishment, as well as his Fourteenth Amendment right to due process, were violated by an instruction in the penalty phase of his trial. Lastly,

Griffin claims that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated by the prosecutor's closing arguments in both the penalty and guilt phases of his trial.

### A. Ineffective Assistance of Counsel

■ To prevail on an ineffective-assistance-of-counsel claim the United States Supreme Court has ruled that a petitioner must establish that his attorney failed to exercise the skill and diligence that a reasonably competent attorney would exercise under similar circumstances and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The petitioner has the burden of establishing that counsel's conduct fell below an objective standard of reasonableness. *Wing v. Sargent,* 940 F.2d 1189, 1191 (8th Cir.1991). The petitioner must also affirmatively establish prejudice resulting from the attorney's conduct. *Lawrence v. Armontrout,* 961 F.2d 113, 115 (8th Cir.1992).

■ Trial counsel's failure to investigate the defendant's alibi defense did not cause the omission of affirmative evidence that would have exculpated Griffin. Nor is there any evidence of prejudice before the court such that the result of the trial would have been different. We agree with the district court's factual finding that the record reflects substantial evidence on which to find Griffin guilty of first-degree murder. We find no merit in the argument.

We also agree with the district court that there is no merit in the petitioner's claim that his trial attorney was ineffective in failing to discover that Robert Fitzgerald was placed in the Federal Witness Protection Program and relocated to St. Louis, Missouri, near the time Moss was murdered. The trial record clearly establishes that Griffin's counsel knew of Fitzgerald's participation in the program prior to trial. *See* Transcript of April 10, 1981, deposition of Robert John Fitzgerald at pp. 26–27. Therefore, trial counsel's conduct was not defective

and the petitioner's due process claim under the Fourteenth Amendment is without merit.

Next, we review petitioner's claim that his trial counsel was ineffective because he did not present evidence at trial that Griffin is left-handed. The trial court found that evidence of Griffin's left-handedness would not have persuasively discredited Fitzgerald's testimony, because he admitted that he assumed that the gun was in the petitioner's right hand, but that he could not "say for certain" or "say positively." (emphasis added). Undercutting the right-handedness of the petitioner would have nominal, if any, effect of Fitzgerald's credibility. Moreover, Fitzgerald positively identified Griffin's features, clothes, and the vehicle in which he was riding. We agree with the trial court that even if trial counsel's conduct was deficient in failing to present evidence of Griffin's left-handedness, the prejudice prong of *Strickland* test has not been met.

The petitioner also contends that trial counsel failed to investigate and present evidence to rebut the prosecution's theory that Griffin had a motive to kill Moss. The prosecution advanced the theory that the petitioner believed that Moss had killed his older brother, Dennis Griffin, in January 1980. We support the district court's finding that the petitioner has not satisfied the second prejudice prong of the *Strickland* test. If the other-motive evidence had been admitted at trial, we cannot say that the outcome of the trial would have been different in light of the eyewitness testimony and other substantial incriminating evidence.

Griffin further alleges that his trial attorney was ineffective in failing to object to the testimony of police officer Thomas Murphy and for failing to call Robert Campbell as a witness. During his oral testimony officer Murphy told the court what Campbell had told him at the scene of the murder. Griffin argued that the hearsay admission violated his Sixth Amendment right to confront his witnesses. The respondent argued that Campbell's statements were offered by Murphy to explain the course of police conduct at the murder scene, not to prove that Griffin shot Campbell. The respondent also

argued that Campbell was available and could have been called by Griffin as a witness. On appeal the Missouri Supreme Court ruled that Campbell's statements delivered through Murphy's testimony were admissible as spontaneous statements or excited utterances. *State v. Griffin*, 662 S.W.2d 854, 858 (Mo.1983), *cert. denied*, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). Unavailability of the declarant is not a prerequisite to satisfying the Confrontation Clause where the out-of-court statement was a spontaneous declaration. *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). A spontaneous declaration is a "firmly rooted" exception to the hearsay rule and thus carries sufficient indicia of reliability to satisfy the Confrontation Clause's reliability requirement. *Id.* 502 U.S. at —— n. 8, 112 S.Ct. at 742 n. 8. There was no violation of Griffin's Sixth Amendment right to confrontation.

The district court, reviewing the findings of the Missouri Court of Appeals on post-conviction, found no merit in Griffin's ineffective-assistance-of-counsel claim focusing on the failure to call Campbell to testify. At an evidentiary hearing, Griffin's trial counsel testified that he did not contact Campbell or make arrangements for him to testify because Griffin was relying upon a clean and simple alibi defense which concerned itself with keeping Campbell out of the courtroom. *Griffin v. State*, 748 S.W.2d at 759. The record establishes that Griffin's counsel filed a pretrial motion in limine to exclude Campbell's testimony. *Id.* The Missouri Court of Appeals court found these actions to constitute matters of professional judgment and trial strategy, and the district court agreed.

Trial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary. When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference given to counsel and his or her professional judgment. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. In this

case counsel's decision not to call Campbell was clearly a matter of trial strategy. Accordingly, trial counsel's conduct does not violate either the performance or prejudice standard in *Strickland.*

■ The petitioner has further argued that his trial counsel was ineffective in failing to object to the testimony of Missouria Moss, the decedent's mother, concerning alleged telephone threats she received prior to her son's death that were unrelated to Griffin. The Missouri Court of Appeals heard this post-conviction claim and ruled that it need not decide whether trial counsel's performance was deficient, because Griffin failed to establish that he was prejudiced. *Griffin v. State,* 748 S.W.2d 756, 761 (Mo.Ct.App.1988). The district court determined that the state court findings on the claim were entitled to a presumption of correctness. We agree that deference should be given to the state court findings. The petitioner submitted no evidence establishing prejudice as required by *Strickland.*

■ During voir dire the state prosecutor inquired of the venirepersons, whether, after hearing all the evidence in the case, they could consider all sentencing alternatives, including imposition of the death penalty. Griffin contends that his trial counsel was ineffective because he did not object to the prosecutor's death-qualification of the jury. In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Id.* at 521–22, 88 S.Ct. at 1777. In a footnote the Court explained that:

> a prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to **consider** all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.

*Id.* at 522 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in the original).

In light of *Witherspoon,* the Missouri Court of Appeals ruled that "[i]f death-qualification of a jury is constitutionally permissible, trial counsel cannot be faulted for failing to take any action to prevent such qualification." *Griffin,* 748 S.W.2d at 761. On habeas review the district court rightly found that the state court's findings of fact were supported by the record and were entitled to a presumption of correctness and that the prosecutor's challenged inquiry was proper under *Witherspoon.* Griffin has not satisfied the performance prong under *Strickland.*

■ On yet another ground, Griffin asserts that his trial counsel was ineffective in failing to investigate and present mitigating evidence during the penalty phase of his trial. Griffin argues that his trial attorney violated the reasonable performance standard under *Strickland* by failing to investigate and present evidence of mitigating circumstances. By not implicating the decedent in the death of Griffin's brother and by not calling immediate members of Griffin's family to plead for his life, Griffin argues that his trial attorney was deficient and he was deprived of effective assistance of counsel.

Following an evidentiary hearing, the Missouri Court of Appeals determined that Griffin had failed to overcome the presumption that his trial attorney had employed sound trial strategy by not presenting mitigating evidence. *Griffin,* 748 S.W.2d at 760. Griffin conceded that, before the penalty phase of his trial, counsel had shown him a list of statutory mitigating circumstances and Griffin had agreed that none of the circumstances applied to his case. *Id.* During the evidentiary hearing Griffin was asked what mitigating evidence he would have wanted his trial counsel to have presented to the jury, and he replied, "I don't know." *Id.* Griffin's trial counsel also testified at the evidentiary hearing that he thought it would have undermined Griffin's credibility to have

had his family members take the stand and plead for mercy when Griffin had maintained his innocence throughout the trial. Given these facts, we find that Griffin has shown neither performance deficiency nor prejudice, and his claim must fail.

 Griffin also challenges as ineffective the brief closing argument by his trial counsel during the penalty phase of the trial. The district court correctly found that the closing arguments in the trial were not evidence and that the trial court had so instructed the jury. We agree with the district court that there is no reason to conclude that a longer or more passionate closing argument would have resulted in an alternative sentence or that the brief dispassionate argument undermined the reliability of the jury's sentence of death. Because the petitioner has established neither a performance deficiency nor prejudice, we affirm the district court's denial of habeas relief on this claim.

Another claim asserts that Griffin's attorney on direct appeal failed to recognize and brief 1) a claim regarding a rebuttal witness to Griffin's alibi defenses under *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); 2) an Eighth Amendment challenge to a mitigating-evidence instruction under *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); and 3) a claim that in his closing arguments the prosecutor referred to Griffin's failure to testify in violation of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

 When state law mandates that a defendant must make pretrial disclosure of his alibi witnesses, then the state must also make a pretrial disclosure of all rebuttal witnesses. *Wardius*, 412 U.S. at 475, 93 S.Ct. at 2212. During Griffin's trial the prosecutor called Elizabeth Mack as a rebuttal witness. Griffin objected that he had not received prior notification of Ms. Mack's appearance, even though he had disclosed his alibi defense in writing before trial. The prosecutor advised the court that he discovered Ms. Mack only after hearing the testimony of Griffin's last alibi witness, Mr. Greenlee. The prosecutor testified that after hearing Greenlee's testimony he went to the "Tradin' Times" advertising agency and

found Ms. Mack. Mack testified the same afternoon. The evidence is undisputed that the prosecutor did not learn the contents of the "Tradin' Times" advertisement before Greenlee testified and only investigated the contents of the advertisement after hearing the alibi testimony. We are in agreement with the district court that no *Wardius* violation occurred in this context, because the prosecutor's undisputed statements to the trial judge clearly indicate that he learned of the rebuttal witness' identity only after Griffin had presented his alibi defense and disclosed her identity to the court shortly thereafter.

 As discussed in Parts II C & D, *infra*, we find no Eighth Amendment violation under *Lockhart* arising from the appellate counsel's failure to brief allegedly erroneous instructions concerning the jury's finding of mitigating circumstances. After reviewing jury instructions numbered 21–23, we affirm the district court's finding that the challenged instructions do not require that the jury unanimously find each mitigating circumstance, as was struck down in *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Because the challenged instructions do not violate *McKoy* or *Mills*, Griffin has not satisfied the *Strickland* standard. Nor does the record support a finding that counsel on direct appeal was deficient in failing to raise and brief the prosecutor's alleged references to Griffin's failure to testify in violation of *Griffin v. California, supra*. No reasonable juror would conclude that the prosecutor's closing argument made reference to the petitioner's failure to take the stand. Accordingly, we find no performance deficiency or prejudice on the part of appellate counsel in not briefing these claims.

 Lastly, Griffin claims that the cumulative effect of all these errors occurring during his trial and direct appeal violate his Sixth Amendment right to effective assistance of counsel. The district court found some merit in the petitioner's argument but was properly governed by *Byrd v. Armontrout*, 880 F.2d 1, 11 (8th Cir.), *cert. denied*,

494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1989), which requires that each claim for habeas relief must stand on its own merits. Accordingly, this claim must fail.

## B. Due Process Claims

In addition to allegations of Sixth Amendment violations, the petitioner alleges multiple violations of his Fourteenth Amendment right to due process. The alleged violations occurred when the prosecution failed to disclose 1) its intended use of testimony to rebut the petitioner's alibi defense; 2) that Robert Fitzgerald, the only eyewitness to the murder, had been arrested for assault and impersonation of a law enforcement official a few months prior to the petitioner's trial; and 3) that Robert Fitzgerald had been placed in the Federal Witness Protection Program and relocated to St. Louis.

■ In his first due process claim the petitioner alleges that the state failed to disclose a rebuttal witness in violation of *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). As discussed *supra*, the district court properly found that nothing in the trial record indicated that the prosecutor knew of Ms. Mack prior to the petitioner's calling Mr. Greenlee as an alibi witness. Given the uncontested nature of these facts, the district court found no due process violation. We agree.

■ In his second due process claim Griffin alleges that the prosecutor failed to inform him that the only eyewitness, Robert Fitzgerald, had been arrested for assault and impersonation of a law enforcement officer. Petitioner claims that failure to disclose this information was a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Suppression by the state of evidence favorable to an accused after a request for discovery violates due process where the evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197. A successful *Brady* claim requires three findings: "(1) the prosecution suppressed the evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material to the issue of guilt." *United States v. Thomas*, 940 F.2d 391, 392 (8th Cir.1991). " '[M]aterial' means that

there exists a reasonable probability that had the evidence been disclosed to the defense, the result would have been different." *Id.*

Griffin's claim does not satisfy the third element under *Brady*. Following a thorough review of the record, the district court found that the information pertaining to Fitzgerald was not "material." The district court found that the information would not have changed the outcome of the trial, because the petitioner's cross-examination of Fitzgerald revealed his criminal history. Given Fitzgerald's prior criminal record and other misconduct, no reasonable probability exists that additional facts would have made a difference with the jury. Hence, the nondisclosed facts were not material. Failure to disclose the information did not entitle Griffin to federal habeas relief.

In his fourth claim Griffin contends that his due process rights were violated when the prosecutor failed to disclose that Fitzgerald was placed in the Federal Witness Protection Program and relocated to St. Louis. The trial record conclusively establishes that prior to trial the prosecutor disclosed Fitzgerald's participation in the Federal Witness Protection Program and his subsequent relocation to St. Louis. *See* Transcript of April 10, 1981, deposition of Robert John Fitzgerald at pages 26–27. Accordingly, we deny habeas relief on this claim.

■ In his fifth claim Griffin alleges that his Fourteenth Amendment rights to fair trial, due process, and equal protection were denied by the prosecutor's use of hearsay testimony from the decedent's mother, Missouria Moss, concerning phone threats she received prior to her son's death. In federal habeas corpus proceedings state evidentiary issues are reviewable only when "the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process." *Wallace v. Lockhart*, 701 F.2d 719, 724 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983). Due process is denied when the error is "gross, conspicuously prejudicial or of such import that the trial was fatally infected." *Rhodes v. Foster*, 682 F.2d 711, 714 (8th Cir.1982) (citing *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct.

264, 50 L.Ed.2d 183 (1976)). This circuit has ruled that this due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on direct appeal. *Redding v. Minnesota,* 881 F.2d 575, 579 (8th Cir.1989), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990) (citing *Daniels v. Wood,* 819 F.2d 195, 197 (8th Cir.), *cert. denied,* 484 U.S. 861, 108 S.Ct. 177, 98 L.Ed.2d 131 (1987)).

In light of these guidelines the district court found no due process violation deriving from the admission of Missouria Moss' testimony. The statements were not unduly prejudicial and in no way fatally infected the trial, because they did not connect the threats to the petitioner. We agree with the district court that the admission of her testimony relating to the telephone threats does not rise to the level of a federal constitutional violation of due process.

Next, the petitioner asserts that his due process rights were violated by the cumulative effect of all the errors committed during his trial and direct appeal. As we addressed the same claim in the context of the Sixth Amendment, each due process claim must succeed or fail on its own merits. *Byrd,* 880 F.2d at 11. Because we find no merit in any of the alleged due process claims, we deny habeas relief for cumulative claims.

### C. Penalty Phase Instruction

 Griffin next claims that his Eighth and Fourteenth Amendment rights were violated by an instruction requiring the jury to "first unanimously agree that a mitigating

circumstance or circumstances existed" before weighing any mitigating evidence against the aggravating circumstance or circumstances. Griffin claims that the challenged instruction violates *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), by requiring the jurors to find each mitigating circumstance unanimously. The relevant part of jury instruction number twenty-two charged:

> If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

Jury instruction number twenty-three charged:

> Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you.

In contrast, the jury instructions in *McKoy* [2] and *Mills* [3] mandated that jurors unanimously agree upon a mitigating circumstance or circumstances. The district court reasoned that instruction number twenty-two in *Grif-*

---

**2.** During the sentencing phase in McKoy's trial, the court instructed the jury to answer four questions, both orally and in writing, in determining its sentence. The first issue asked, "Do you unanimously find from the evidence, beyond a reasonable doubt, the existence of one or more of the following aggravating circumstances?" The second issue asked, "Do you unanimously find from the evidence the existence of one or more of the following mitigating circumstances?" The third issue asked, "Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances found by you is, or are, insufficient to outweigh the aggravating circumstance or circumstances found by you?" (emphasis added). The fourth issue asked, "Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently sub-

stantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you." (emphasis added). *McKoy,* 494 U.S. 433, 436–37, 110 S.Ct. 1227, 1230, 108 L.Ed.2d 369 (1990).

**3.** The Supreme Court explained that at the time *Mills* was before the high court, Maryland jurors were instructed to mark "yes" or "no" to their determination of which, if any, mitigating circumstances existed. The jurors could not mark any box without unanimity, and nothing in the jury instructions or verdict forms indicated that the jurors could leave an answer blank. *Mills,* 486 U.S. 367, 378–79, 108 S.Ct. 1860, 1867–68, 100 L.Ed.2d 384 (1988).

*fin* did not "require the jurors to unanimously agree on any particular mitigating factor, as in *Mills* and *McKoy*, but rather, instructed the jurors that they must unanimously agree that the mitigating factors they found outweigh the aggravating factors before a *life sentence* is *mandated*." (Emphasis added.) Memorandum and Order, July 2, 1993, at p. 64–65. In considering a penalty of death there was no substantial probability that reasonable jurors thought, in the words of *Mills*, that "they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id.* at 384, 108 S.Ct. at 1870. We agree with the district court that the challenged jury instructions do not violate *McKoy* or *Mills* and are not unconstitutional.

### D. Prosecutor's Closing Arguments

In his last claim for relief petitioner contends that the prosecutor's closing arguments contained improper remarks regarding Griffin's failure to testify and an erroneous legal definition of reasonable doubt. In addition, Griffin asserts that the prosecutor interjected his personal viewpoints as well as facts not in evidence into his closing argument. In doing so, Griffin contends that the prosecutor violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

■ The district court properly found that no distinction exists between the guilt and penalty phases of a trial with respect to the Fifth Amendment privilege against self-incrimination. A court must examine the context of the challenged remark to determine whether it was improper. Upon examining the context in which the prosecutor said "[w]hat was the defendant's testimony" during the guilt phase of the trial, the district court found that the inquiry was not an unconstitutional reference to Griffin's failure to testify, but was rather a poor choice of words. From the record it appears as if the prosecutor intended to say "defendant's evidence" and, in fact, later corrected himself. Upon review, we find no constitutional violation.

■ Griffin argues that the prosecutor's improper oratorical antics—evidentiary mis-statements, inflammatory appeals, and an erroneous definition of reasonable doubt—rendered his trial fundamentally unfair. The district court thoroughly reviewed the trial record, including the jury instructions and closing arguments. The district court found that the prosecutor's erroneous definition of reasonable doubt was harmless, because the trial court had correctly defined reasonable doubt in the jury instructions. While finding that a few inflammatory remarks were made during the course of the prosecutor's long-winded closing argument, the district court found no errors rising to the level of a constitutional violation. We agree with the district court and find no merit in this claim.

### III. THIRD AMENDED PETITION

#### A. Procedural Bar

■ In his third amended petition Mr. Griffin asserts a constitutional claim not raised in his earlier petitions. Griffin claims that his Eighth and Fourteenth Amendment rights were violated by his continued incarceration and impending execution based on newly discovered evidence. Unless a habeas petitioner shows cause and prejudice, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a court may not reach the merits of a new claim, which constitute an abuse of the writ. *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Griffin seeks to establish his actual innocence as a means of obtaining federal review of his constitutional claims.

■ A claim of actual innocence requires a dual analysis. *Schlup v. Delo*, 11 F.3d 738, 739–40 (8th Cir.1993). First, a petitioner "may make the requisite showing by establishing that ... he has a colorable claim of factual innocence." *Id.* The United States Supreme Court has referred to the test as the "miscarriage of justice" or "actual innocence" exception. *Sawyer v. Whitley*, —— U.S. ——, ——, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). An assertion of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the

merits." *Herrera v. Collins,* —— U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). Accordingly, we must determine whether Mr. Griffin's claim of actual innocence opens the gateway to our consideration of his constitutional claims on that basis.

Upon the order of this panel the district court conducted an evidentiary hearing on October 6, 1993. The district court heard testimony from Kerry Caldwell, one of four individuals allegedly involved in Moss' murder; Robert Fitzgerald, the only eyewitness to the murder; Terrence McDonough, a private investigator hired by the petitioner's habeas counsel; and Frederick Steiger, petitioner's trial and appellate counsel.

After considering the testimony, evidentiary submissions, and arguments, the district court found that the newly discovered evidence did not entitle Griffin to habeas relief. At no point during the evidentiary hearing did Fitzgerald recant his pretrial identification of Griffin. Fitzgerald's testimony at the state trial held in June 1981, as well as his testimony in the evidentiary hearing conducted thirteen years later, consistently maintained that the photograph he had selected matched the front-seat passenger he saw shoot Moss. Fitzgerald has consistently testified that he had a clear, unobstructed view of the gunman for a period of between thirty to forty-five seconds.

Fitzgerald's testimony at the evidentiary hearing further established that Fitzgerald had never doubted his in-court identification of Griffin prior to the time he met with McDonough. After observing and questioning Fitzgerald at the evidentiary hearing, the district court determined that his testimony was not credible to the extent it differed from his earlier testimony in state court. The district court also determined that Fitzgerald's statements contained in the McDonough affidavit were the product of bias and were offered in an attempt to provide petitioner with relief while not refuting his earlier, more credible trial testimony.

The district court further found that Kerry Caldwell's recent statements were insufficient to entitle Griffin to habeas relief. At the evidentiary hearing Caldwell testified that on the day Moss was murdered, he, Caldwell, went to a telephone, called a drug gang member named Darryl Smith, and alerted Smith that Moss was trafficking at the corner of Sarah and Olive Streets in north St. Louis. Caldwell testified that he waited on the street corner and twenty-five minutes later a Chevrolet Impala arrived at the corner. According to Caldwell, the car was owned by Ronnie Thomas–Bey and driven by Humphrey Scott. Darryl Smith was in the back seat with a 30/30 carbine rifle, and a man named Hump (also known as Parker) was in the front passenger seat with a pistol. Caldwell testified that Griffin was not a member of the drug ring, was not present on the day of the shooting, and had no involvement in the shooting death of Moss. According to Caldwell, he, Humphrey Scott, Darryl Smith, and Hump (Parker) were responsible for the Moss murder.

The record reflects that Scott was killed in 1986, Smith was killed in 1990, and Caldwell testified that he does not know whether Hump (Parker) has been granted immunity or whether he is even alive today. Caldwell also testified that he was good friends with the Griffin family from having grown up in the same neighborhood. He stated that the petitioner's brother, Brian Griffin, had given him money upon his release from prison in 1988.

In 1990, Caldwell was arrested for carrying a concealed weapon. The state charge was dismissed and Caldwell was federally charged with being a felon in possession of a firearm. Federal authorities granted Caldwell conditional immunity in exchange for his testimony regarding offenses involving Jerry Lewis–Bey. Caldwell testified that he discussed the Moss killing with federal agents, including Robert Dwyer, a former detective with the Drug Enforcement Agency who submitted an affidavit in September 1993. In his affidavit Dwyer averred that in December 1990 or January 1991 Caldwell discussed with him his knowledge and involvement in the Moss murder. Dwyer said that Caldwell confessed to him that he was involved in the Moss murder and was an eyewitness. Dwyer further averred that Caldwell definitely told him that Griffin was not present

at the murder scene and had nothing to do with the murder of Moss.

Upon carefully reviewing Caldwell's testimony, this panel remanded the district court's October 1993 memorandum and order for a factual finding on the actual innocence claim. On May 6, 1994, the district court issued a well-reasoned memorandum in which it did not find Caldwell's testimony sufficiently credible to warrant habeas relief at such a late hour. In particular, the district court found numerous discrepancies between Caldwell's testimony at the 1981 trial and his testimony before the October 1993 evidentiary hearing. In addition, former DEA agent Robert Dwyer did not testify at the evidentiary hearing to substantiate Caldwell's claims, and no explanation was given for Dwyer's absence.

The district court further found that Caldwell came forward very belatedly in an attempt to save Griffin by identifying three men he asserts were involved in Moss' murder. Like the district court, this panel is cognizant of the fact that two men named by Caldwell are dead and the whereabouts of the third man are completely unknown. Given these circumstances, the petitioner has not shown by clear and convincing evidence that but for a constitutional error no reasonable jury would have found him guilty. Thus, no basis exists upon which to sustain the motion for stay or to reverse the district court.

### B. Due Process

The second prong of Griffin's "actual innocence" allegation requires that we consider the claim itself as a constitutional violation. *Schlup v. Delo*, 11 F.3d at 743. The Supreme Court in *Herrera* declared "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera*, —— U.S. at ——, 113 S.Ct. at 869. In a concurrence Justice O'Connor emphasized that such "federal proceedings and relief—if they are to be had at all—are reserved for 'extraordinarily high' and 'truly persuasive demonstrations of

"actual innocence" ' that cannot be presented to state authorities." —— U.S. at ——, 113 S.Ct. at 874 (quoting the opinion of the Court).

The *Herrera* decision directs the resolution of Griffin's actual innocence claim. As explained above in part III–A, when the new evidence is analyzed, the inconsistencies and weaknesses are readily apparent, as is the eleventh-hour nature of the claim. As such, the petitioner has not met the extraordinarily high burden and no truly persuasive demonstration of actual innocence is before the panel. *Cf. Schlup*, 11 F.3d at 744.

## IV. FOURTH AMENDED PETITION

The district court gave Griffin leave to file a fourth amended petition in which he alleged that the St. Louis police officers violated his due process rights by engaging in suggestive misconduct during a pretrial photo identification procedure in which Robert Fitzgerald positively identified the petitioner. Griffin claims that he is entitled to a new trial because a substantial likelihood exists that he was mistakenly identified by Fitzgerald. Moreover, Griffin contends that any subsequent in-court identification was irreparably tainted by improper police conduct. Because the district court found that the actual innocence exception to the procedural bar applied to this claim, the district court addressed the merits of the claim.

A conviction based on eyewitness identification will be set aside only when pretrial identification procedures were so impermissibly suggestive that the procedures themselves give rise to a very substantial likelihood of irreparable harm. *Trevino v. Dahm*, 2 F.3d 829, 833 (8th Cir.1993). The analysis for challenging an improper identification mandates two separate findings. First, a court must determine whether the challenged confrontation between the witness and suspect was impermissibly suggestive. *Graham v. Solem*, 728 F.2d 1533, 1541 (8th Cir.1981), *cert. denied*, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). If so, then the court must decide whether, under the totality of the circumstances, the suggestive confrontation created a substantial likelihood

of irreparable misidentification. *Id.* Second, a court must ascertain whether the identification procedure was so needlessly suggestive and conducive to mistaken identification as to be fundamentally unfair. *Id.* In essence the second inquiry is whether the challenged identification is reliable. The Supreme Court has declared that the factors a court is to consider in evaluating the likelihood of misidentification include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

■ When an identification procedure is challenged in a habeas corpus action under 28 U.S.C. § 2254, the court must presume the state court's factual findings are correct, unless the findings lack fair support in the record. *Graham,* 728 F.2d at 1540 (citing *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)); 28 U.S.C. § 2254(d)(8). This court has previously ruled that the presumption applies to the evaluation of both factors relevant to the determination of reliability as well as to the credibility determinations. *See Trevino,* 2 F.3d at 833; *Graham,* 728 F.2d at 1540–41. The district court found that the record fairly supported the trial court's factual findings regarding the pretrial photograph identification and that the findings would be presumed correct. We agree.

■ At the October 1993 evidentiary hearing Fitzgerald testified that he had no doubt that his pretrial identification of Griffin was accurate. The district court found that at no time during the hearing did Fitzgerald recant his testimony. *Cf. Lewis v. Erickson,* 946 F.2d 1361, 1362 (8th Cir.1991). The district court further found that Fitzgerald questioned the accuracy of his in-court identification only after Terrence Donough, a private investigator, informed him that Griffin

had been given the death penalty for the Moss murder.

The district court determined that the pretrial identification of petitioner by Fitzgerald was reliable and not tainted by improper police conduct. There is no error in that finding.

## V. CONCLUSION

For all the foregoing reasons we affirm the district court's dismissal of Griffin's first[4], second, third, and fourth amended habeas petitions.

BEAM, concurring specially.

I concur in the opinion of the court. I write separately only to state that I would not reach the second prong of Griffin's "actual innocence" allegation, the argument advancing a free-standing constitutional due process claim. The Supreme Court stated in *Herrera v. Collins,* —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) that a federal habeas court may grant relief for such a claim only "if there [is] no state avenue open to process such a claim." *Id.* —— U.S. at ——, 113 S.Ct. at 869. It is clear in *Herrera* that the Supreme Court considers executive clemency to be a state avenue open to process such a claim. Thus, Griffin's due process claim is premature. Having made this observation, however, I agree with the court that under any of the definitions of the term by the Supreme Court, *see, e.g., Kuhlmann v. Wilson,* 477 U.S. 436, 454–55, 106 S.Ct. 2616, 2627–28, 91 L.Ed.2d 364 (1986) and *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992), Griffin has failed to establish "actual innocence" either as a gateway for consideration of otherwise barred constitutional claims or as a free-standing due process violation.

---

**4.** The petitioner's first petition for writ of habeas corpus was reviewed and denied by this panel on October 11, 1991. *See Griffin v. Delo,* 946 F.2d 1356 (8th Cir.1991).