No. 95-2782

Victor Carter,                    *
                                  *
          Appellant,              *
                                  *   Appeal from the United States
     v.                           *   District Court for the District
                                  *   of Nebraska.
Frank X. Hopkins,                 *
                                  *
          Appellee.               *

                Submitted:  March 13, 1996

                    Filed:  August 8, 1996

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

     Victor Carter filed this petition for habeas corpus relief under 28
U.S.C. § 2254.  He asserts that he received ineffective assistance of
counsel and was denied his Sixth Amendment right to a fair trial.  The
district court[1] denied habeas corpus relief.  We affirm.

I.   BACKGROUND

     On the morning of October 9, 1985, Jeffrey Peterson, a white male,
and his cousin John Flynn, went looking for Janelle Anzalone in the
vicinity of 19th Street and Lathrop Avenue in Omaha, Nebraska.  Anzalone
allegedly owed Gerald Kincaid money which Peterson was attempting to
collect.  While in the neighborhood,

---

[1]The Honorable Richard G. Kopf, United States District Judge
for the District of Nebraska, adopting the report and
recommendation of United States Magistrate Judge David L. Piester.

Peterson and his cousin were involved in a confrontation with two black individuals.  Later that same morning, Peterson was shot and killed outside Kincaid's home.

After the confrontation but before the shooting, two black individuals, later identified as Victor Carter and his brother, George, drove through Kincaid's neighborhood looking for Kincaid.  They pulled up alongside a car containing Peggy Hatfield and Scott Reynolds.  Carter threatened Hatfield with a gun as a warning to Kincaid to stay out of Carter's neighborhood.  He told Hatfield to tell Kincaid that his "crib ain't nowhere to be messin' around, and my people ain't nobody to be fuckin' with."  Appendix at 220.  Hatfield and Reynolds then drove to a phone booth ten to fifteen blocks away to call Kincaid and warn him that the Carter brothers were looking for him.  By the time Hatfield and Reynolds reached Kincaid by phone, however, Peterson had been shot.

During this time, the Carter brothers had apparently been circling Kincaid's home awaiting further confrontation.  In an attempt to flee to safety, Peterson and Flynn started across the street to a neighbor's home.  As they did so, the Carter brothers sped by in their car, slammed on the brakes and jumped out.  After jumping from the car, Victor Carter shot Jeffrey Peterson.

During the investigation into Peterson's murder, several witnesses surfaced.  To aid in the suspects' identification, a lineup was arranged in which Carter and his two brothers participated.  Hatfield and Reynolds identified Carter and his brother George as Peterson's assailants.  Although they had not witnessed the murder, Hatfield and Reynolds had seen the Carter brothers just before the murder and identified their car as the

same car later connected to the Peterson shooting. In addition, Kincaid testified as an eyewitness to the murder.[2]

The Carter brothers were arrested and taken to the police station for questioning. They were charged with first degree murder, use of a firearm in the commission of a felony, and being habitual criminals. Carter claims that he repeatedly requested, but was denied, the assistance of counsel during his post-arrest questioning at the police station.

During jury selection, Carter's counsel did not object to the prosecution's striking of potential black jurors, despite Carter's claims that he expressed concern over the elimination of blacks from his jury. Carter was tried by an all-white jury. On April 10, 1986, Carter was convicted on all charges.

Carter was sentenced to life in prison on the murder count and ten years on the firearm count. His conviction and sentence were affirmed on direct appeal by the Nebraska Supreme Court. State v. Carter, 413 N.W.2d 901 (Neb. 1987). Carter's motion for state postconviction relief was denied and that denial was affirmed on appeal by the Nebraska Supreme Court. Carter then filed a petition for a writ of habeas corpus in federal court which was denied by the district court. Carter appeals that denial to this court.

---

[2]Kincaid's testimony has been the subject of much debate in this case. Originally, Kincaid told police he had not seen the actual shooting. Prior to trial, however, Kincaid stated that he had seen the shooting and identified Victor and George Carter as the shooters. Kincaid testified to the same at trial. In postconviction proceedings, Kincaid claimed he was unable to identify the Carter brothers as the shooters. Later, Kincaid returned to his earlier testimony and claimed that his recantation was the product of threats from a member of the Carter family at the correctional center. Those threats were documented in the correctional center's disciplinary proceedings. Both the jury and the district court found Kincaid's trial testimony to be the most credible version of events.

## II.  DISCUSSION

Carter asserts that his counsel was ineffective for failing to object to:  (1) the prosecution's allegedly discriminatory use of peremptory challenges; (2) the in-court identifications of Carter based on an allegedly impermissibly suggestive out of court showup; and (3) the alleged repeated denial of Carter's requests for counsel following arrest.  He also claims he was denied his Sixth Amendment right to a fair trial because of his counsel's failure to request a continuance following the discovery of eyewitness testimony.

To succeed on an ineffective assistance of counsel claim, Carter must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficient performance will only be found where counsel's performance fell below an objective standard of reasonableness.  Randolph v. Delo, 952 F.2d 243, 246 (8th Cir. 1991), cert. denied, 504 U.S. 920 (1992).  We evaluate counsel's performance not with the clarity of hindsight, but in light of the facts and circumstances at the time of trial.  Id.  In examining whether prejudice has resulted from counsel's deficient performance, the ultimate focus is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 113 S. Ct. 838, 844 (1993).

The district court's determination on an ineffective assistance of counsel claim, both as to the deficient performance and prejudice components, is a mixed question of law and fact.  Sherron v. Norris, 69 F.3d 285, 290 (8th Cir. 1995).  We review the district court's factual determinations for clear error but its legal conclusions de novo.  Id.; Wilson v. Armontrout, 962 F.2d 817, 819 (8th Cir.), cert. denied, 506 U.S. 942 (1992).

## A.  __Batson__ Issue

Carter alleges that his trial counsel was ineffective for failing to object to the prosecution's allegedly discriminatory use of peremptory challenges.  Carter claims that he had specific discussions with his lawyer regarding the need for objections to juror strikes and yet his attorney failed to make those objections.  In __Batson v. Kentucky__, 476 U.S. 79 (1986), the United States Supreme Court held that the race-based exclusion of potential jurors through the use of peremptory challenges violates the Equal Protection Clause of the United States Constitution.  In a subsequent case, the Court held that __Batson__ applies "retroactively to all cases, state or federal, pending on direct review or not yet final" at the time of the __Batson__ decision.  __Griffith v. Kentucky__, 479 U.S. 314, 328 (1987).  Because Carter had not yet been sentenced at the time of the __Batson__ decision, __Batson__ applies to this case.

Applying the deferential __Strickland__ standard, we conclude that the district court correctly determined that Carter's counsel was not ineffective for failing to raise the __Batson__ issue during jury selection.  Although the theory behind __Batson__ was available to counsel at the time jury selection occurred here, __Batson__ itself had not yet been decided.  We have stated previously that counsel need not "anticipate a change in existing law" to render constitutionally effective assistance of counsel.  __Ruff v. Armontrout__, 77 F.3d 265, 268 (8th Cir. 1996).  Therefore, counsel's failure to make the __Batson__ objections did not fall below the deferential standard of reasonableness established in __Strickland__.  Nor was counsel's performance deficient for failing to raise the __Batson__ issue on direct appeal.  __See__ __Randolph__, 952 F.2d at 246.

Counsel need not raise "every single conceivable argument" to be effective.[3]  <u>Ruff</u>, 77 F.3d at 268.

Carter cites <u>Government of the Virgin Islands v. Forte</u>, 865 F.2d 59 (3d Cir. 1989), in support of the proposition that his counsel was ineffective in failing to make a <u>Batson</u> objection despite his contrary requests.  In that case, a consulting attorney informed the trial attorney prior to trial that <u>Batson</u> was pending before the United States Supreme Court.  The consulting attorney also urged the trial attorney to preserve possible <u>Batson</u> objections in the event that <u>Batson</u> proved helpful in the future.  In addition, Forte repeatedly discussed the matter with his trial attorney and requested him to object to the jury's composition.  Despite this, Forte's trial counsel did not object to the prosecution's use of peremptory challenges.  On appeal, the court held that under those "extraordinary" facts, trial counsel's failure to raise the <u>Batson</u> objection was unreasonable.  <u>Forte</u>, 865 F.2d at 63.  Such extraordinary facts do not exist in this case.

Carter claims that his alleged repeated expressions of concern about facing an all-white jury position his case closer to <u>Forte</u> than to our cases holding that failure to raise a <u>Batson</u> objection, in situations where <u>Batson</u> had not yet been decided, was not ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>Ruff</u>, 77 F.3d at 268; <u>Randolph</u>, 952 F.2d at 246.  We disagree. Initially, we note that even if Carter's allegations are true, trial counsel in this case was only presented with a client's generalized concern over the makeup of his jury.  There was no involvement by an outside attorney informing trial counsel of the need to preserve an objection or of the fact that a case which could be dispositive of the jury selection issue was currently pending in front of the United States Supreme Court. Nor was there a specific legal

_____

[3]In so holding, we note our reluctance to second-guess trial counsel's actions where, as here, no record of voir dire exists.

-6-

constitutional basis offered for the objection as there was in <u>Forte</u>.  As the court in <u>Forte</u> took care to point out:

> [W]e do not imply that any time a trial attorney does not carry out her client's requests she may be held to be ineffective. We are well aware that sometimes defendants make demands on their attorneys to advance insubstantial or even scandalous contentions and that even advancing a contention not of that character might not be sound trial strategy.

<u>Forte</u>, 865 F.2d at 63.  Consequently, the <u>Forte</u> case is distinguishable from the facts at hand.  Applying the deferential <u>Strickland</u> standard, therefore, we find that the district court correctly determined that Carter's counsel was not ineffective for failing to raise the <u>Batson</u> issue during jury selection.

## B.  Identification

Carter next claims that his counsel was ineffective for failing to object to the in-court identifications of him even though they were based on an allegedly unconstitutionally suggestive pretrial showup.  In this case, the so-called showup occurred at the police station and included Carter and his two brothers.  We assume, without deciding, that Carter was subjected to an impermissibly suggestive showup.  <u>See</u> <u>Robinson v. Clarke</u>, 939 F.2d 573, 576 (8th Cir. 1991) (a showup is generally limited to those instances in which only one suspect is set up for viewing by the eyewitness).  In order to prevail on this claim, however, Carter must show not only that the showup was unduly suggestive, but also that it was so impermissibly suggestive that there was a substantial likelihood of irreparable misidentification.  <u>Trevino v. Dahm</u>, 2 F.3d 829, 833 (8th Cir. 1993); <u>U.S. v. Ramsey</u>, 999 F.2d 348, 349 (8th Cir. 1993).  "The central question is whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pretrial identification techniques."  <u>Trevino</u>, 2 F.3d at 833.

After assuming the showup was impermissibly suggestive, the district court carefully analyzed the applicable factors to determine whether the in-court identifications were independently reliable. See Neil v. Biggers, 409 U.S. 188, 199-200 (1972).[4] The district court determined the identifications were independently reliable and that no substantial likelihood of irreparable misidentification existed. We agree with that conclusion and find it amply supported by the record. Because the identifications were independently reliable and thus, admissible, counsel's failure to object to their admission was not deficient performance. Indeed, it was objectively reasonable not to make the meritless objection. Consequently, Carter failed to show that his counsel was ineffective for failing to object to the in-court identifications.

**C.  Denial of Counsel**

Carter next argues that his counsel was ineffective for failing to object to the alleged repeated denial of Carter's requests for counsel following his arrest. Carter asserts that one week elapsed between the time of the crime and the time he was provided with counsel. Before Carter may ask a federal court to review this federal habeas claim, he must first present the substance of the claim to the state courts. Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). Carter failed to present this claim to the state courts and has further failed to show cause and prejudice to excuse the default. Therefore, this claim was correctly denied as procedurally defaulted. See id. at 855.

---

[4]Those factors include:  (1) the witness's opportunity to view petitioner at the time of the crime; (2) the witness's degree of attention to the suspect; (3) the accuracy of the witness's prior descriptions; (4) the witness's level of certainty; and (5) the length of time between the crime and the identification. Id.

D.  Right to a Fair Trial

Carter claims he was denied his Sixth Amendment right to a fair trial in that his counsel failed to move for a continuance after notification that the state would present Gerald Kincaid's eyewitness testimony of the murder.  If this claim were treated as a Sixth Amendment claim, we would find that Carter waived the claim by failing to raise it either at trial or on direct appeal.  See, e.g., Wright v. Nix, 928 F.2d 270, 272 (8th Cir.), cert. denied, 502 U.S. 838 (1991).  However, this claim is simply one more allegation of ineffective assistance of counsel and will be treated as such.

We note that Carter's counsel was given Kincaid's statement two weeks before trial.  Carter seems to think that a longer preparation time would have uncovered discrepancies in Kincaid's testimony.  It is important to note, however, that counsel had the opportunity to, and in fact did, cross-examine Kincaid at trial.  Carter does not allege that the outcome of his trial would have been different had he had more time to prepare for the eyewitness testimony.  Therefore, Carter has failed to show prejudice within the meaning of Strickland, i.e., that the result of his trial was unreliable because of his counsel's failure to move for a continuance. Strickland, 466 U.S. at 687.  We have considered the remainder of Carter's arguments and find them to be without merit.

**III.  CONCLUSION**

Because we find no error in the district court's denial of Carter's postconviction relief, we affirm.

-9-

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.