Samuel Lee McDONALD, Appellant,

v.

Michael BOWERSOX, Appellee.

No. 95–3863.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1996.

Decided Dec. 2, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 23, 1997.

Richard Sindel, argued, Clayton, MO, for appellant.

Stephen Hawke, Assistant Attorney General, argued, Jefferson City, MO, for appellee.

Before McMILLIAN, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MAGILL, Circuit Judge.

Samuel Lee McDonald, a death row inmate in Missouri state prison, was convicted and sentenced to death by a jury on February 24, 1982, for the May 16, 1981 shooting of an off-duty police officer. After repeated filings for postconviction relief in Missouri state court, McDonald filed his first federal petition for a writ of habeas corpus in 1989. The district court[1] denied McDonald's petition in 1995. McDonald now appeals the district court's decision. McDonald argues that the district court erred in failing to hold an evidentiary hearing to establish his claim of ineffective assistance of trial counsel and that his constitutional rights were violated by the following: (1) the state trial court's failure to appoint a psychiatric expert to help McDonald prepare his defense; (2) the ineffective assistance of trial counsel; (3) an improper penalty phase

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

argument by the state; (4) improper trial court conduct; (5) the trial court's refusal to grant McDonald relief from the aggravating circumstance that the offense was committed for the purpose of receiving money; (6) the trial court's failure to grant McDonald's motion for a judgment of acquittal; and (7) an improper jury instruction regarding mitigating circumstances. We affirm the decision of the district court that denied McDonald a writ of habeas corpus.

## I.

On May 16, 1981, Robert Jordan, an off-duty police officer, and his eleven-year-old daughter went to the Forest Package Liquor Store in St. Louis, Missouri, to buy snacks for the weekend. They arrived at the store around 11 p.m. At the time, Jordan was dressed as a civilian. However, in compliance with his police department's official policy, Jordan was carrying his concealed service revolver.

Meanwhile, McDonald and his girlfriend, Jackie Blue, had been out driving in the vicinity of the liquor store for several hours. Shortly before 11 p.m., McDonald parked the car a couple of blocks from the store and told Blue that he would be back soon. He exited the car and then walked to a street corner near the Forest Package Liquor Store.

When Jordan and his daughter left the store, McDonald confronted them with a handgun. McDonald fired, wounding Jordan in the chest and left arm. Jordan's daughter ran back into the store, and from there she witnessed her father's killing.

McDonald stood over Jordan with his handgun pointed at Jordan. Jordan handed McDonald his wallet, which contained Jordan's police badge. Jordan's daughter testified that she could see her father's badge in his wallet from where she was standing. McDonald began to turn away from Jordan, but he then turned back again and fired another shot into Jordan's chest.

As McDonald fled with the wallet, Jordan managed to fire several shots with his service revolver, hitting McDonald three times. Jordan then stumbled back into the store and

asked for the police. He died shortly thereafter.

McDonald made his way back to Blue's car and asked her to take him to the hospital. McDonald soon changed his mind, however, and asked her to take him to a friend's house for medical attention. When they found that the friend was not there, McDonald stuffed his shirt down a sewer drain and instructed Blue to take him to a veterans hospital. At the hospital, he told the medical staff that he had been shot in a robbery that took place in a part of town different from where he had robbed and shot Jordan.

Despite this story, the police soon discovered that McDonald was the one who had shot and killed Jordan. The police found Jordan's wallet in the back of the car owned by Blue, and retrieved McDonald's blood-soaked shirt from the drain pipe. McDonald was arrested for Jordan's murder, and stood trial in Missouri state court for the crime. At trial, the robbery and shooting were described by Jordan's eleven-year-old daughter as well as two other eyewitnesses.

McDonald was convicted by a jury of having killed Jordan, an off-duty police officer, "for the purpose of receiving money or any other thing of monetary value...." *State v. McDonald*, 661 S.W.2d 497, 500 (Mo.1983) (en banc) (*McDonald I*), cert. denied, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The jury sentenced McDonald to death and the Missouri Supreme Court affirmed both the conviction and the sentence. *Id.*

McDonald filed a pro se motion in Missouri state court for postconviction relief and for an evidentiary hearing, pursuant to Missouri Supreme Court Rule 27.26. After counsel was appointed and amended motions were filed, a four-day evidentiary hearing was held in October 1986. A Missouri state court denied McDonald's motion for postconviction relief on January 20, 1987. *See McDonald v. State*, 758 S.W.2d 101, 103 (Mo.Ct.App.1988) (*McDonald II*). The Missouri Court of Appeals affirmed that decision. *Id.*

In 1989, McDonald filed pro se his first petition for federal habeas corpus relief. He filed an amended petition in 1990 and re-

quested an evidentiary hearing in 1991. The district court granted the motion for an evidentiary hearing on December 1, 1992. *McDonald v. Delo*, 897 F.Supp. 1224, 1235 (E.D.Mo.1995) (*McDonald III*). However, the district court subsequently vacated that order and entered a judgment denying habeas relief in 1995. *See id.* at 1236. In a thirty page opinion, the district court addressed McDonald's fifty-plus claims, many of which the district court found to be procedurally barred. McDonald now appeals the district court's decision to deny McDonald an evidentiary hearing as well as seven of the claims rejected by the district court.

## II.

■ We review the district court's findings of fact for clear error, *Fairchild v. Lockhart*, 979 F.2d 636, 639 (8th Cir.1992), *cert. denied*, 509 U.S. 928, 113 S.Ct. 3051, 125 L.Ed.2d 735 (1993), and we review the district court's conclusions of law *de novo*. *Hendrix v. Norris*, 81 F.3d 805, 807 (8th Cir.1996). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (citing 28 U.S.C. § 2241). Accordingly, "[a] federal court may not re-examine a state court's interpretation and application of state law." *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir.1994); *see Estelle*, 502 U.S. at 67–68, 112 S.Ct. at 480 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Pursuant to 28 U.S.C. § 2254(d) (1994), we presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise or the petitioner produces evidence that convincingly establishes that the state

court's findings were erroneous. *See generally Thompson v. Keohane*, —— U.S. ——, ——–——, 116 S.Ct. 457, 463–64, 133 L.Ed.2d 383 (1995); *see also Wayne v. Benson*, 89 F.3d 530, 534 (8th Cir.1996) (construing 28 U.S.C. § 2254(d)).[2]

## III.

■ McDonald argues that the district court erred when it denied his request for an evidentiary hearing, thereby preventing him from establishing his claim of ineffective assistance of counsel.

We have held that in order for a habeas petitioner to be entitled to an evidentiary hearing in federal court, he must show "both [ (1) ] cause for his failure to adequately develop the facts material to his ineffective assistance claim in the postconviction state court hearing and [ (2) ] actual prejudice resulting therefrom; alternatively, petitioner must show that a fundamental miscarriage of justice would result from the denial of an evidentiary hearing in federal court." *McCann v. Armontrout*, 973 F.2d 655, 658 (8th Cir.1992) (construing *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 10–12, 112 S.Ct. 1715, 1720–22, 118 L.Ed.2d 318 (1992)), *cert. denied*, 507 U.S 942, 113 S.Ct. 1342, 122 L.Ed.2d 724 (1993).

Although McDonald has not had an evidentiary hearing in federal court, he had an evidentiary hearing in state court in 1986. *See McDonald II*, 758 S.W.2d at 103. The state court considered at that time numerous claims of ineffective assistance of counsel. Both the state court that held the evidentiary hearing and the Missouri Court of Appeals that reviewed the state court's decision found that McDonald was not denied effective assistance of counsel. *See McDonald II*, 758 S.W.2d at 103, 105–06.

---

2. Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), amend the federal statutory law of habeas petitions. We have not yet determined the extent to which these amendments apply to pending habeas petitions in capital cases, nor do we need to answer this question here. *Cf. Oliver v. Wood*, 96 F.3d 1106, 1108 n. 2 (8th Cir.1996) ("We have not yet determined to what extent the new [Antiterrorism] Act applies to noncapital cases pending on appeal."); *Rehbein v. Clarke*, 94 F.3d 478, 481 n. 4 (8th Cir.1996) ("The new [Antiterrorism] Act makes substantive and procedural changes which could conceivably affect our review of this [noncapital] case.... Because [the petitioner's] petition would fail under any plausible application of the new Act as well as under prior law, however, we need not determine whether the new Act applies to this appeal.").

McDonald has not alleged any cause that prevented him from adequately developing the facts material to his ineffective assistance of counsel claim during his October 1986 state court postconviction evidentiary hearing, which was held over the course of four days. Furthermore, McDonald has not shown actual prejudice; the evidence is overwhelming that McDonald is factually guilty of murder. Finally, having considered McDonald's claim of ineffective assistance of counsel on the merits, *infra* at § V, there is ample support for our conclusion that denying McDonald an evidentiary hearing does not result in a fundamental miscarriage of justice.

### IV.

■ McDonald next argues that he is entitled to a writ of habeas corpus because he was denied the assistance of a psychiatric expert during the guilt and penalty phases of his trial. We disagree.

McDonald indicated to his counsel that he might have a mental disease or defect in January 1982. *See McDonald II,* 758 S.W.2d at 105. He made this claim after reading about Vietnam Stress Syndrome, which is also called Posttraumatic Stress Disorder. *Id.* By this time, McDonald's counsel had already started to pursue a claim of mental disease or defect as a defense strategy. McDonald's counsel had already filed a "Late Notice of Intent to Rely on the Defense of Mental Disease or Defect," *id.,* presumably pursuant to Mo.Rev.Stat. § 552.030. The state court denied this motion because it was a nonstandard. motion that, had it been granted, would have entitled the defense to keep the results of the psychiatric examination from the prosecution. *Id.* at 105 n. 2. In addition, by January 1982, McDonald's trial counsel had already filed three motions for the appointment of a psychiatrist, which had been denied. *Id.* at 105. These requests for psychiatric assistance were also denied because they were "not in conformity with statutory provisions." *Id.* This was presumably because the governing statute, Mo.Rev.Stat. § 552.030, did not allow for nondiscoverable psychiatric evaluations. *See McDonald III,* 897 F.Supp. at 1238.

Responding to McDonald's January 1982 suggestion that she explore Vietnam Stress Syndrome as a defense, McDonald's counsel sent for and obtained McDonald's military records. The records spanned three years, from 1965 to 1968, and included the eleven-month period McDonald spent in Vietnam. The records specifically stated that McDonald did not suffer from "any psychosis, neurosis, organic brain syndrome, or mental deficiency." *Id.* Nevertheless, after reviewing these records, McDonald's counsel filed yet another request for a confidential psychiatric evaluation. This request was once again conditioned on the evaluation's being nondiscoverable by the prosecution. It was also denied. *Id.*

■ The United States Supreme Court has held that a defendant is constitutionally entitled to the assistance of a psychiatric expert to help prepare his defense "when [he] has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial...." *Ake v. Oklahoma,* 470 U.S. 68, 74, 105 S.Ct. 1087, 1091, 84 L.Ed.2d 53 (1985). This entitlement also applies to the penalty phase of a trial. *Id.* at 84, 105 S.Ct. at 1096. However, to be entitled constitutionally to psychiatric assistance under *Ake,* McDonald had the burden to demonstrate to the state trial court "a reasonable probability that the requested expert would aid in the defendant's defense and that the denial of expert assistance would result in an unfair trial." *Guinan v. Armontrout,* 909 F.2d 1224, 1227 (8th Cir.1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991).

Applying this standard to the facts before us, we conclude that McDonald failed to carry his burden. After reviewing the four motions for psychiatric assistance filed by McDonald's trial counsel, we agree with the district court's finding that McDonald's trial counsel never demonstrated to the state trial court that there existed a reasonable probability that an expert would aid in McDonald's defense or that denying the expert assistance would result in an unfair trial. *See McDonald III,* 897 F.Supp. at 1237–38. Although McDonald's trial counsel repeatedly asserted that psychiatric expertise was need-

ed to help her decide whether to mount a defense of mental disease or defect, this mere assertion does not satisfy the showing required by *Ake*.

■ McDonald also asserts that he was entitled to a psychiatric evaluation under Missouri state law. Under Missouri state procedural law, a defendant is automatically entitled to a mental evaluation when he files a plea of not guilty by reason of mental disease or defect or when he files a timely notice of his intent to rely on a mental defect defense. Mo.Rev.Stat. § 552.030 (1981). McDonald never pled not guilty by reason of mental disease or defect and the Missouri Supreme Court specifically found that, as a matter of Missouri state law, McDonald's counsel did not properly file a motion informing the court of an intent to rely on an insanity defense. *McDonald I*, 661 S.W.2d at 501. Although McDonald filed a Late Notice of Intent to Rely on a Defense of Mental Disease or Defect, the Missouri Court of Appeals found that this motion "was a nonstandard motion that omit[ted] the phrase 'the defense hereby gives notice of intent to rely upon mental disease or defect as a defense.'" *McDonald II*, 758 S.W.2d at 105 n. 2.[3] Thus, according to the Missouri Court of Appeals and the Missouri Supreme Court, McDonald's trial counsel never filed a motion that triggered Missouri's obligation to provide McDonald with a psychiatric expert under Mo.Rev.Stat. § 552.030.

We are bound by the state courts' interpretation of state law in federal habeas proceedings unless a defendant's conviction violates the United States Constitution or federal law. *Estelle*, 502 U.S. at 67–68, 112 S.Ct. at 479–80.[4] Because we can see no constitutional violation resulting from the Missouri Supreme Court's interpretation of Missouri state law, we are bound by the state court's holding that McDonald was not entitled to the use of a psychiatric expert under state law.

**3.** McDonald's counsel appears to have decided instead to ask for a nondiscoverable psychiatric examination. *McDonald I*, 661 S.W.2d at 501.

**4.** For example, a state court's arbitrary application of its own procedural rules may be just such an exception. *See Mack v. Caspari*, 92 F.3d 637,

## V.

McDonald argues that his Sixth Amendment right to the effective assistance of counsel was violated. Specifically, he faults his counsel's failure to file a motion notifying the trial court of McDonald's intent to rely on a defense of mental disease or defect. Furthermore, McDonald faults his counsel's failure to present an argument of mental disease or defect during the penalty phase of his trial.

■ To prevail on his ineffective assistance of counsel claim, McDonald has the burden of showing (1) that his counsel's assistance fell below an objectively reasonable standard and (2) that he was prejudiced by his counsel's ineffective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Antwine v. Delo*, 54 F.3d 1357, 1365 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996). The claim of ineffective assistance of counsel is a mixed question of law and fact. *Carter v. Hopkins*, 92 F.3d 666, 669 (8th Cir.1996). We review the district court's factual findings for clear error while reviewing its conclusions of law *de novo*. *Id.*

■ McDonald has argued repeatedly that his trial counsel's strategy of asking for a nondiscoverable psychiatric examination was unreasonable because such a strategy had already been rejected by the Missouri Court of Appeals in *State ex rel. Jordon v. Mehan*, 597 S.W.2d 724 (Mo.Ct.App.1980). *Jordon*, however, is readily distinguishable from McDonald's case.

*Jordon* held that persons invoking Mo.Rev. Stat. § 552.030 were not entitled to a preliminary, nondiscoverable psychiatric examination to determine whether a mental defense should be used, 597 S.W.2d at 726–27, whereas the strategy of McDonald's counsel was to

640 (8th Cir.1996) ("[A] contention that a state court has applied a procedural rule arbitrarily to a defendant's prejudice may state a federal constitutional due process violation...."). McDonald has made no such allegation of arbitrariness.

obtain a nondiscoverable psychiatric examination *prior to* invoking § 552.030. A court may have been more amenable to allowing a nondiscoverable examination prior to formal invocation of § 552.030. In contrast to what McDonald claims, McDonald's trial attorney did not duplicate the strategy rejected in *Jordon* because McDonald's counsel had not yet invoked § 552.030 when she requested a preliminary, nondiscoverable examination. The very premise of McDonald's argument of ineffective assistance of counsel, that his attorney used a strategy that had been previously rejected in *Jordon,* is therefore invalid.

Moreover, with respect to the merits of McDonald's claim, the Missouri Court of Appeals also considered and rejected McDonald's claim of ineffective assistance of counsel, detailing at length the reasons why "[c]ounsel did all that was possible based on the known facts." *McDonald II,* 758 S.W.2d at 105. We agree with the Missouri appellate court's conclusion that McDonald's trial counsel did not act unreasonably.

Given the paucity of evidence that McDonald suffered from a mental disease or defect,[5] it was not objectively unreasonable for McDonald's trial counsel to forego an examination. It was not objectively unreasonable to conclude that the possible benefits of having McDonald undergo a discoverable psychiatric examination outweighed the risk of allowing the prosecution to obtain an examination beneficial to the state's case against McDonald.

Similarly, McDonald cannot show that he was prejudiced by his attorney's strategy of not invoking § 552.030. Based on the 1986 deposition testimony of McDonald's own expert, a mental examination before trial most likely would only have hurt McDonald's defense.[6] Since McDonald's counsel was unable to convince the state court to allow a nondiscoverable examination, an unhelpful mental examination would have been discoverable by the prosecutor's office and almost certainly used to McDonald's detriment. Therefore, the decision of McDonald's counsel to forego a mental examination may have helped rather than prejudiced McDonald's defense.

We also reject McDonald's claim that his counsel was ineffective because she failed to present an argument that McDonald suffered from a mental disease or defect during the penalty phase of trial. As we have detailed above, there was minimal evidence tending to prove that McDonald had a mental disease or defect. Had McDonald's counsel made the argument that McDonald suffered from a mental disease or defect, there was substantial evidence available to the government to rebut the argument. In these circumstances, not only is it likely that the jury would have rejected McDonald's

---

5. McDonald's military records stated that he did not suffer from a mental deficiency. *McDonald III,* 897 F.Supp. at 1238. Furthermore, at oral argument for this appeal, McDonald's counsel conceded that neither McDonald's mother nor his wife would have been able to testify that McDonald suffered from a mental disease or defect. Also, prior to the shooting of Jordan, McDonald had been arrested four times. He had not relied on a defense of mental disease or defect on any of those four occasions. McDonald's state trial attorney had previously been McDonald's defense counsel for at least one of these prior felonies and thus was well aware that McDonald had previously defended himself without relying on a defense of mental disease or defect.

6. The 1986 posttrial testimony of McDonald's own psychiatric expert strongly suggests that psychiatric testimony at trial would have been detrimental to McDonald's defense. The psychiatrist explained that the contours of an offense like the one McDonald committed may have been inconsistent with a claim of having Posttraumatic Stress Disorder. II J.A. at 383–84, 389–99. The expert noted that planning and executing a robbery may be inconsistent with a stress disorder attack because the hallmark of such an attack is the disproportionate reaction to sudden, unexpected, and stress-inducing stimuli. II J.A. at 390. McDonald surveyed the scene of his intended crime for several hours before committing the crime, shot Jordan to disable him, robbed Jordan, and only then fired the shot to Jordan's chest that killed him. *McDonald I,* 661 S.W.2d at 500.

Moreover, the psychiatrist said that people with Posttraumatic Stress Disorder have "a diminished capacity to deliberate," II J.A. at 364, and not, as McDonald would argue, that they completely lack the capacity to deliberate. Also, the psychiatrist said that, although this stress disorder may "contribute" to an explanation of McDonald's offense, the disorder could not provide a total explanation. II J.A. at 366.

argument—thereby failing to satisfy *Strickland*'s prejudice prong—but it might well have held McDonald's efforts to avoid responsibility for his actions against him. We cannot say that it was objectively unreasonable for McDonald's counsel to believe that presenting arguments about McDonald's mental status may have been detrimental to her client, and McDonald has therefore failed to satisfy either prong of the *Strickland* test.

## VI.

McDonald argues that he is entitled to a writ of habeas corpus because of alleged misconduct by the state trial court. McDonald claims that the state court violated his rights under the Due Process Clause [7] by (1) warning a witness not to breach his duty of confidentiality; (2) leaving the bench to investigate a courtroom disturbance; (3) asking defense counsel not to place an exhibit so as to obstruct the defendant's view of the witnesses; (4) introducing the victim's relatives to the jury; (5) allowing the testimony of the victim's widow; (6) allowing the victim's widow to display grief in front of the jury; and (7) allowing certain questions about prior consistent statements of McDonald's girlfriend, Jackie Blue.[8]

We may not grant a writ of habeas corpus based on the alleged misconduct of a state trial court unless the state trial court's behavior deprived a petitioner of a constitutional right such as due process. *See Pickens v. Lockhart,* 4 F.3d 1446, 1454 (8th Cir.1993), *cert. denied,* 510 U.S. 1170, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994); *see also Cooley v. Lockhart,* 839 F.2d 431, 432 (8th Cir.1988). To show a deprivation of due process, a petitioner must show that "the challenged error [was] gross, conspicuously prejudicial or of such import that the trial

was fatally infected." *Rhodes v. Foster,* 682 F.2d 711, 714 (8th Cir.1982); *see also Culkin v. Purkett,* 45 F.3d 1229, 1235 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 127, 133 L.Ed.2d 76 (1995).

None of McDonald's claims of alleged trial court errors rise to the level of a due process violation. McDonald's first three objections—to the trial judge's admonitions about confidentiality, the trial judge's leaving the bench to investigate a courtroom disturbance, and the trial judge's asking defense counsel not to place an exhibit in a way that would block the defendant's view of the witnesses—are without merit. With respect to the judge's admonitions about confidentiality, the judge merely reminded a witness who had a preexisting duty of confidentiality that the witness must respect that duty. With respect to the second objection, the trial judge seems to have left the bench briefly only to investigate a minor courtroom disturbance. As for McDonald's third objection, the trial court spoke to defense counsel about the placement of a certain exhibit to insure that McDonald's view of the witnesses would not be obstructed. Certainly such an act is not improper, given that McDonald has a constitutional right to view the witnesses who testify against him. *See Coy v. Iowa,* 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988). Indeed, each of these individual acts appear to have been proper exercises of judicial authority, and could not constitute any violation of due process, and certainly were not so grossly and conspicuously prejudicial or of such import that the trial was fatally infected.

The gravamen of McDonald's fourth through seventh objections concerns the admission of certain testimonial evidence. In a federal habeas petition, this Court may only review state evidentiary issues when " 'the

---

7. While McDonald has generally alleged both Eighth Amendment and due process violations, only his due process arguments are sufficiently developed to allow analysis. On their face, McDonald's bare assertions have failed to state a cognizable Eighth Amendment claim entitling him to habeas relief. Accordingly, we address only his due process arguments.

8. McDonald also argues that he should be granted the writ because of the cumulative effect of

this misconduct. However, we may not grant a writ of habeas corpus based on a claim of cumulative effect. *Byrd v. Armontrout,* 880 F.2d 1, 11 (8th Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990) ("Because each claim of constitutional deprivation must stand on its own, we reject this [cumulative effect] claim as well." (internal citations and quotations omitted)).

asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process.'" *Griffin v. Delo*, 33 F.3d 895, 904 (8th Cir.1994) (quoting *Wallace v. Lockhart*, 701 F.2d 719, 724 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983)), *cert. denied*, —— U.S. ——, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995). After careful review of the record, we can find no specific constitutional protection that was violated nor can we see how any of the evidence challenged by McDonald so prejudiced him as to deny him due process.

## VII.

McDonald next argues that he is entitled to habeas relief because the prosecutor's closing argument violated McDonald's rights under the Eighth Amendment and the Due Process Clause.

 Citing *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), McDonald first asserts that his Eighth Amendment rights were violated when the prosecutor told the jurors that their decision to impose the death penalty would be reviewed many times to insure against mistakes. In *Caldwell*, the Supreme Court held that it is a violation of the Eighth Amendment "to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. at 2639.

In a later case, however, the Supreme Court held that *Caldwell* is not to be applied retroactively. *Sawyer v. Smith*, 497 U.S. 227, 229, 110 S.Ct. 2822, 2824, 111 L.Ed.2d 193 (1990) (holding that *Caldwell* cannot serve as a basis for federal writs of habeas corpus for convictions made final before *Caldwell* was decided in 1985); *see also Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) (generally, a petitioner seeking a writ of habeas corpus may not rely on a rule of constitutional law established after his conviction became final). Because McDonald's conviction became final in 1983, two years before *Caldwell* was decided, McDonald cannot rely on the *Caldwell* decision in seeking a writ of habeas corpus.

 McDonald also asserts that various statements in the prosecutor's closing argument violated McDonald's right to due process. Having reviewed the prosecutor's closing argument in its entirety, we cannot say that McDonald was prejudiced by the prosecutor's argument. This is particularly so because it is uncontroverted that the jury was properly instructed not to consider the prosecutor's closing statement as evidence and, taking into account the violent nature of the crime McDonald committed, there is no reasonable probability that the outcome of the sentencing phase would have been different had the prosecutor not made his allegedly prejudicial remarks. *See generally, Miller v. Lockhart,* 65 F.3d 676, 682–85 (8th Cir. 1995) (discussing when a prosecutor's closing argument violates a defendant's due process).

## VIII.

 McDonald contends that there was insufficient evidence for the jury to find the aggravating circumstance for sentencing that McDonald murdered Officer Jordan for the purpose of receiving money.

In his initial petition for postconviction relief, McDonald argued to the Missouri Supreme Court that the trial court had misapplied Missouri statutory law by failing to cabin narrowly the aggravating circumstance of committing an offense "for the purpose of receiving money or any other thing of monetary value." *McDonald I*, 661 S.W.2d at 502. McDonald argued that this aggravating offense could never apply to a murder committed during the course of a robbery. *Id.* The Missouri Supreme Court rejected McDonald's argument and held instead that the "aggravating circumstance ... was properly submitted and supported by substantial evidence." *Id.* at 505.

McDonald argued to the district court below that there was insufficient evidence for the jury to have found the aggravating circumstance of committing an offense for the purpose of receiving money and that the state trial court therefore erred by failing to dismiss this aggravating circumstance. The

district court held that McDonald was procedurally barred from bringing this claim. *Mc-Donald III*, 897 F.Supp. at 1245. In the alternative, the district court held that this claim has no merit.[9] *Id.* We agree that this claim is procedurally barred.

▮▮▮ We will not consider a petitioner's claim to federal habeas relief if the habeas petitioner fails both (1) to exhaust his state remedies and (2) to preserve his claim for review according to state procedural rules. *See Satter v. Leapley*, 977 F.2d 1259, 1261–62 (8th Cir.1992).

▮▮▮ To avoid procedural default of a federal claim in state court, a petitioner must present his federal constitutional claim to the state courts, relying on "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. . . ." *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir.1988) (internal quotations omitted); *see Myre v. Iowa*, 53 F.3d 199, 200 (8th Cir.1995). A petitioner who presents a state law claim in state court will avoid procedural default with respect to a federal claim if "the claim the petitioner made in state court is synonymous with an accepted principle of federal law." *Myre*, 53 F.3d at 201 (interpreting *Satter*, 977 F.2d at 1262, which holds that a petitioner necessarily raises a due process challenge to the conviction if the petitioner challenges the sufficiency of the evidence to convict in a state proceeding). We have recognized that, although it is possible to raise a state law claim that is so closely related to a federal constitutional claim as to be synonymous, it is equally possible to raise a state law claim that rests solely on state law principles. *See Myre*, 53 F.3d at 201. Similarly, the Supreme Court has "indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a

state court." *Gray v. Netherland*, —— U.S. ——, ——, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996).

Here, McDonald's state court claim did not directly challenge the sufficiency of evidence but was instead premised on the argument that the state trial court misapplied the relevant Missouri state statute. As such, his claim did not automatically present a federal due process challenge. Indeed, McDonald's claim before the state court was narrowly concerned with state law statutory interpretation. It was therefore not synonymous with a due process or any other federal constitutional claim. Because McDonald did not bring a constitutional challenge before the state courts in his postconviction proceedings, McDonald has procedurally defaulted on his sufficiency of evidence claim.

McDonald can only overcome this procedural bar to our review of his due process claim if he can make a showing of cause for the procedural default and prejudice resulting from the alleged constitutional violation, or "that a fundamental miscarriage of justice would otherwise result because he is actually innocent of capital murder or the death penalty." *Zeitvogel v. Delo*, 84 F.3d 276, 279 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 368, 136 L.Ed.2d 258 (1996); *see also Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). McDonald has not attempted to make a showing of cause and prejudice or a fundamental miscarriage of justice, nor do we see any basis in the record before us for such a showing.

## IX.

▮▮▮ McDonald claims that he is entitled to habeas relief because the state presented insufficient evidence to prove his deliberation in killing Jordan, an essential element of the state's case against McDonald. He argues

---

9. The district court also held, in the alternative, that this claim could not be the basis for granting a writ of habeas corpus because the United States Supreme Court only recognized insufficiency of evidence as a cognizable ground for habeas relief in 1990. *McDonald III*, 897 F.Supp. at 1245 (citing *Lewis v. Jeffers*, 497 U.S. 764, 778–79, 110 S.Ct. 3092, 3101–02, 111 L.Ed.2d 606 (1990)). Because McDonald's conviction became final before 1990, the principles enunciated in *Teague*, 489 U.S. at 310–11, 109 S.Ct. at 1075–76, may bar the retroactive application of this ruling to McDonald's case. We need not decide this question here and accordingly decline to do so.

that the state trial court should have granted his motion for acquittal. We disagree.

The Missouri Supreme Court specifically addressed McDonald's insufficiency of the evidence claim with respect to deliberation. The court construed a "deliberate act" to be "one performed in a cool and deliberate state of mind" and specifically noted that "[n]o particular [length of] time is required to permit a finding of deliberation." *McDonald I*, 661 S.W.2d at 501. Applying this standard, the Missouri Supreme Court held that a jury could have found that McDonald acted with deliberation when he killed Jordan. *Id.*

The United States Supreme Court has held that a writ of habeas corpus based on a claim of insufficiency of the evidence will be granted only if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *see Rhode v. Olk–Long*, 84 F.3d 284, 288 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 232, 136 L.Ed.2d 163 (1996). Moreover, we are bound by the Missouri Supreme Court's interpretation of the meaning of a deliberate act under Missouri law. *See Estelle*, 502 U.S. at 67–68, 112 S.Ct. at 479–80; *Schleeper*, 36 F.3d at 737. The record shows that McDonald wounded Jordan, took his wallet, started to turn away, and only then turned around to fire the shot that killed Jordan. *McDonald I*, 661 S.W.2d at 501. Based on this evidence, we conclude that a rational trier of fact could have found proof of deliberation beyond a reasonable doubt.

## X.

 McDonald argues that he is entitled to habeas relief because the jury instructions given by the state trial court on the use of evidence of mitigating circumstances violated the Eighth and Fourteenth Amendments.

McDonald specifically challenges the last part of the thirtieth jury instruction. It read as follows:

If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you

to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

II J.A. at 523.

Pointing to the word "unanimously," McDonald argues that this instruction prevented the jury from considering all mitigating circumstances and thereby violated his Eighth and Fourteenth Amendment rights. He points to *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), in which the United States Supreme Court found unconstitutional jury instructions that led the jury to believe that they could only return a verdict of life imprisonment if they unanimously agreed to the specific factors they would consider to be mitigating. *Id.* at 384, 108 S.Ct. at 1870; *see also McKoy v. North Carolina*, 494 U.S. 433, 439, 110 S.Ct. 1227, 1231, 108 L.Ed.2d 369 (1990) (reiterating the concern that one holdout juror should not be able to prevent the other jurors from considering mitigating evidence).

McDonald's *Mills* claim fails on the merits. This case is factually almost identical to *Griffin v. Delo*, 33 F.3d 895 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995). In *Griffin*, the defendant challenged a jury instruction identical to jury instruction number thirty in the instant case. *Compare Griffin*, 33 F.3d at 905 (jury instruction number twenty-two), with II J.A. at 523 (jury instruction number thirty). The jury instruction challenged by Griffin was followed immediately by a jury instruction that read as follows:

Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you.

*Griffin*, 33 F.3d at 905. In McDonald's trial, jury instruction number thirty was followed by a jury instruction identical to the above quoted instruction from *Griffin*. II J.A. at 524.

In *Griffin*, we decided that the challenged jury instruction, an instruction identical to

the one now before us, was not contrary to *Mills* and *McKoy* and was not otherwise unconstitutional. *Griffin*, 33 F.3d at 906. Accordingly, we hold that jury instruction number thirty did not violate McDonald's constitutional rights under *Mills*.[10]

### XI.

For the reasons stated above, we affirm the district court's decision to deny McDonald a writ of habeas corpus.

---

10. Moreover, McDonald is procedurally barred from bringing his *Mills* claim before us because he did not present this claim in state court. *See Zeitvogel*, 84 F.3d at 279 (holding that a petitioner who failed to present his federal constitutional claim for habeas relief, and the facts supporting it, in state court is procedurally barred from doing so before the federal court). A petitioner may overcome the procedural bar if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *see also Zeitvogel*, 84 F.3d at 279.

McDonald proffers novelty as the cause of his procedural default. He points out that his *Mills* claim did not exist at the time McDonald was petitioning the state courts. We have previously rejected this argument. *See Stokes v. Armontrout*, 893 F.2d 152, 155–56 (8th Cir.1989) (holding that although novel constitutional principles may sometimes suffice to show prejudice and cause, *Mills*-type claims are not novel).

Furthermore, McDonald is unable to show that a fundamental miscarriage of justice will result if we do not consider his underlying claim. To determine whether a petitioner's underlying claim should be considered so as to avoid a fundamental miscarriage of justice, we ask "if the jury had been told, in compliance with *Mills*, that any mitigating circumstance, even if not unanimously found by the jury, could be weighed, would it probably have fixed the punishment at life in prison?" *Stokes*, 893 F.2d at 156 (internal quotations omitted). McDonald asserts that the answer is yes because at least one juror is "likely" to have been swayed by testimony of McDonald's mental health, especially in light of his service in Vietnam.

McDonald's argument is not convincing. The challenged jury instruction is not far from an ideal *Mills* instruction. Here, although the word "unanimously" was used, it was not stressed in such a way that made it probable that reasonable jurors would believe that they "were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Mills*, 486 U.S. at 384, 108 S.Ct. at 1870.